tra work or the furnishing of such extra materials. The aggregate price to be paid for extra work or materials so authorized or ordered shall not exceed five per cent. (5%) of the contract price or total cost of the work and materials."

The plaintiff's general manager testified that at about the time of starting the work on the two contracts he had a conversation with the defendant's engineer, in which it was determined that it would be a good thing to put in pitch expansion joints, and that the engineer directed him to do that, and promised to send him an order for them. The contracts did not provide for expansion joints. Without any further agreement, and without the written authority of the borough president, the plaintiff proceeded to put in the expansion joints as the work progressed. The final certificate on the Second avenue contract was given by the engineer on the 6th day of October, 1905, and on the 28th day of November, 1905, the final payment was made and a general release given by the plaintiff to the defendant. The final certificate on the Broadway contract was made on the 20th day of October, 1905, and the final payment was made and a general release given on December 1, 1905.

On the 30th of November, 1905, the borough president gave to the plaintiff four separate orders for expansion joints for pavements on Second avenue, Broadway, Jamaica avenue, and Sanford avenue, the aggregate cost of which was more than $1,000. Probably the four orders were given separately to avoid complying with section 419 of the charter (Laws 1901, c. 466), and to make it appear that the work, called for by them, was independent of the contracts for repaving. It is unnecessary, however, to determine whether said section 419 applies, for it is plain that the putting in of the expansion joints was extra work within the meaning of the contract, and could only be recovered for in case, before performance, the borough president had authorized it in writing, and had agreed in writing with the contractor upon the prices to be paid. That provision of the contract could not be evaded after the contract had been completed, final payments made, and releases given, by written orders which were probably designed to evade a provision of the charter as well.

Judgment and order should be reversed, and the complaint dismissed, with costs. All concur.

---

FINNEGAN et al. v. McGUFFOG.

(Supreme Court, Appellate Division, First Department. June 10, 1910.)

1. TRUSTS (§ 104*)—CONSTRUCTIVE TRUST—SUCCESSOR IN INTEREST.

Where defendant assumed control over a leasehold after the death of her husband, who held the same in trust for plaintiffs, by taking a renewal of the lease in her own name, defendant thereby became a trustee of a constructive trust for the use of the same beneficiaries.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 155; Dec. Dig. § 104.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. LIMITATION OF ACTIONS (§ 36*)—EQUITABLE REMEDIES—CONSTRUCTIVE TRUSTS.

Where defendant's husband executed a declaration of trust of a leasehold, to exist until the attainment of lawful age of the youngest child of the trustee's deceased brother, a right to an accounting and to the possession of the leasehold arose in favor of the beneficiaries when such youngest child became of age, so that, whether a statutory limitation could or could not be asserted by the actual trustee, the 10-year limitation applicable to equitable actions commenced to run in favor of defendant, sought to be charged as a constructive trustee because she took possession of the property on the death of the trustee, either at the termination of the express trust or when she took possession in apparent hostility to the trust.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 172; Dec. Dig. § 36.*]

3. LIMITATION OF ACTIONS (§ 37*)—RELIEF ON GROUND OF FRAUD—CONSTRUCTIVE TRUSTS.

Where a complaint to enforce a constructive trust was not based on actual fraud, the 6-year limitation imposed by Code Civ. Proc. § 382, subd. 5, on actions to procure a judgment other than for a sum of money on the ground of fraud in cases cognizable by a court of chancery, was inapplicable.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 183; Dec. Dig. § 37.*]

Appeal from Special Term, New York County.

Action by Mary Ann Finnegan, individually, etc., and others, against Jessie McGuffog. Judgment for defendant, and plaintiffs appeal. Affirmed, on the opinion below.

See, also, 122 N. Y. Supp. 1128.

John McGuffog, a brother of defendant's husband, died in 1860, possessed of a leasehold interest in certain premises located on the south side of Tenth street, between Third and Fourth avenues, in the city of New York. The lease contained renewal privileges for 21-year terms. John McGuffog died, leaving a widow, who died shortly thereafter, and three very small children, who are the appellants. The ground rent and taxes being unpaid, the landlord dispossessed the heirs and personal representative of McGuffog, and thereafter in May, 1863, executed a new lease on the same premises to James McGuffog, defendant's deceased husband, with privileges of renewal for two further terms of 21 years each, provided he assumed and paid the back rents and taxes and other charges. James McGuffog, on taking the new lease, executed a declaration of trust that he held the premises for the benefit of the children of his deceased brother, John McGuffog, and in part for the support, maintenance, and education of such children, after he was reimbursed for the sums and expenses incurred and paid by him in payment of the incumbrances and charges on the property and such taxes and other expenses or charges as might accrue in holding the premises and keeping the same in repair until the youngest survivor of the children arrived at 21 years of age, when he was to transfer all his right, title, and interest in the lands to such children or their survivors, after being first reimbursed as stated, and deducting a reasonable sum for the care, maintenance, and education of the children. Defendant, the wife of James McGuffog, never knew of this declaration of trust until the commencement of this action, and the appellants were too young for the transaction to make any impression on them, even if they were informed, though there was evidence that one of them had some knowledge of the situation. They all resided on the premises at the death of their uncle James and for some time afterwards. At about the time of making the lease, James McGuffog and his wife, who had several children of their own, took into their household the three children of his deceased brother, and reared and educated them. James McGuffog only survived his brother until 1868, and from that time defendant, his wife, maintained a home and cared:

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

for the appellant, Mary Ann Finnegan, and her sister, Ella Geraldine, until they were married, and their brother, Samuel M., until he died. At the death of James McGuffog in 1868, he, with his wife and the two families of children, was living in the house on the premises in controversy. No administration was had of his estate. The respondent, being the only adult, assumed charge of the household and paid the ground rent, taxes, and other charges as they became due, and in 1884, her husband's lease having expired, she obtained a new lease in her own name, erected a new building on the land, where there had been only a shed, and continued in possession until the expiration of that lease, and then obtained another renewal in 1905, after which time she was first advised of the appellants' claim adverse to her.

The following is the opinion of Bischoff, J., in the trial court:

"The defendant's assumption of control over the leasehold, by taking a renewal in her own name after the death of the prior lessee, whose possession was affected by his own declaration of trust, sufficed to constitute her a trustee of the constructive trust. The cause of action in favor of the parties interested as beneficiaries under the declaration of trust accrued when the defendant took possession in the year 1868, or at the latest in the year 1884, when she took the lease; but the trust itself as originally declared expired by its own limitation in the year 1876, when the event occurred upon which its duration was limited—the attainment of lawful age of the youngest child of John McGuffog. At that time the right to an accounting and to the possession of the leasehold arose in favor of the persons in whose favor the trust was declared, and, whether a statutory limitation could or could not be asserted by the actual trustee, certainly the 10-year limitation, applicable to equitable actions, commenced to run in favor of the party charged as a constructive trustee simply through her having taken possession of trust property, either at the termination of the direct trust or at the time when possession was taken in apparent hostility to the trust. Lammer v. Stoddard, 103 N. Y. 672, 9 N. E. 328; Gilmore v. Ham, 142 N. Y. 1, 36 N. E. 826, 40 Am. St. Rep. 554. The complaint does not proceed upon allegations of actual fraud; hence the special limitation contained in subdivision 5 of section 382 of the Code of Civil Procedure has no bearing upon the case (see Carr v. Thompson, 87 N. Y. 160, 164), and it is apparent that in the aspect of the case most favorable to the plaintiffs the cause of action accrued in the year 1884, when the renewal lease was taken, and was barred by the 10-year limitation. Gilmore v. Ham, supra.

"There must be judgment for the defendant, with costs."

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, CLARKE, and MILLER, JJ.

H. C. Henderson, for appellants.
J. M. Stoddard, for respondent.

PER CURIAM. Judgment affirmed, with costs, on opinion in the court below. Order filed.